IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**JACQUELINE GENT, on behalf of
JNNG,**

    **Plaintiff,**

vs.                                                                                                  Case No. 1:11cv189-SPM/CAS

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

    **Defendant.**

_____/

## REPORT AND RECOMMENDATION

    This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and local rule 72.2(D).   It is recommended that the decision of the Commissioner be affirmed.

**I.  Procedural status of the case**

    On July 18, 2008, Plaintiff, Jacqueline Gent, on behalf of her granddaughter JNNG, a minor child, applied for supplemental security income benefits.   R. 107-13.   (Citations to the Record shall be by the symbol R. followed by a page number that appears in the lower right corner.)    JNNG was born in 2003, and was seven years old at

Case No. 1:11cv189-SPM/CAS

the time of the administrative hearing (on February 15, 2011).   R. 16.   In the Disability Report, it is alleged that JNNG is entitled to supplemental security income benefits due to ADHD and mental delay.   R. 138.

The claim was denied initially on March 17, 2009, R. 55-57, and upon reconsideration on August 11, 2009.   R. 61-63.   Thereafter, on September 16, 2009, a written request for hearing was filed.   On February 15, 2011, a hearing was conducted by the Administrative Law Judge (ALJ).   The ALJ briefly questioned JNNG, R. 35-36, and Ms. Gent also testified in support of the application.   R. 37-48.   Plaintiff was represented by counsel.   R. 33.

On March 21, 2011, the ALJ reported his Decision and determined that JNNG is not disabled and entitled to supplemental security income.   R. 28.

On July 14, 2011, the Appeals Council of the Social Security Administration denied JNNG's request for review.   R. 1-3.   The Decision of the ALJ stands as the final decision of the Commission.

Plaintiff sought judicial review in this Court and both parties filed memoranda of law.   Docs 11 & 13.

## II. Legal standards guiding judicial review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002). "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted). The Court must give "substantial deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). The reviewing court is not free to reweigh the evidence or substitute its judgment for that of the Commissioner. Bloodsworth, 703 F.2d at 1239. "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence

relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

For persons under the age of 18, a claimant must show "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.924.

A child's claim for supplemental security income benefits is analyzed by following the rules set forth in 20 C.F.R. § 416.924, et seq. The Commissioner "will consider the combined effects of all [the child's] impairments upon [the child's] overall health and functioning," and is to evaluate "any limitations in [the child's] functioning that result from . . . symptoms, including pain." 20 C.F.R. § 416.924(a). The claim is to be evaluated in three steps:

    1.    Is the child currently engaged in substantial gainful activity?

    2.    Does the child have any severe impairments?

    3.    Does the child have any severe impairments that meet, are medically equal to, or functionally equal in severity to, an impairment listed in Appendix 1 of 20 C.F.R. Part 404?

20 C.F.R. §§ 416.924(a)-(d).

At step two, the claimant's "physical and mental impairments(s)" are considered to determine if the claimant has "an impairment or combination of impairments that is severe." 20 C.F.R. § 416.924(a). The claim is denied at step two if the child does not have a severe impairment. A "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations" is not a "severe impairment." 20 C.F.R. § 416.924(c).

At step three, the issue of whether the impairment meets or equals a listed impairment is the same as for evaluation of an adult claim. If the impairment neither meets nor equals a listed impairment, the Commissioner must next determine whether the impairment is functionally equal in severity to a listed impairment. 20 C.F.R. § 416.924(a). This step is unique to child supplemental security income disability claims. There is no "residual functional capacity" determination, and no determination of ability to perform work.

"In determining whether a child's impairment functionally equals a listing, the regulations require consideration of 'six domains,' which are 'broad areas of functioning intended to capture all of what a child can and cannot do.'" Gibbs v. Barnhart, 130 Fed. Appx. 426, 429 (11th Cir. 2005) (citation omitted).

As to functional equivalency, the regulations provide:

If you have a severe impairment or combination of impairments that does not meet or medically equal any listing, we will decide whether it results in limitations that functionally equal the listings. By "functionally equal the listings," we mean that your impairment(s) must be of listing-level severity; i.e., it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain, as explained in this section.

20 C.F.R. § 416.926a(a); *see also* 20 C.F.R. § 416.926a(d).   The domains are:

>   (i)     Acquiring and using information;
>
>   (ii)    Attending and completing tasks;
>
>   (iii)   Interacting and relating with others;
>
>   (iv)    Moving about and manipulating objects;
>
>   (v)     Caring for yourself; and,
>
>   (vi)    Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i) – (vi).

"[A] 'marked' limitation in a domain [will be found] when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities."   20 C.F.R. § 416.926a(e)(2)(i).   It "means a limitation that is 'more than moderate' but 'less than extreme.'"   *Id.*

> If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. § 416.926a(e)(2)(iii).

"[A]n 'extreme' limitation in a domain [will be found] when your impairment(s) interferes *very* seriously with your ability to independently initiate, sustain, or complete activities."   20 C.F.R. § 416.926a(e)(3)(i) (emphasis added).

> If you are a child of any age (birth to the attainment of age 18), we will find that you have an "extreme" limitation when you have a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain,

and your day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. § 416.926a(e)(3)(iii).

The Commissioner's regulations provide that test scores are not to be relied upon without considering other evidence, and "[n]o single piece of information taken in isolation can establish whether you have a 'marked' or an 'extreme' limitation in a domain." 20 C.F.R. § 416.926a(e)(4)(i). Test scores are considered "together with the other information we have about your functioning, including reports of classroom performance and the observations of school personnel and others." 20 C.F.R. § 416.926a(e)(4)(ii).

To decide whether the claimant has a "marked" or an "extreme" limitation, the Commissioner:

> will consider your functional limitations resulting from all of your impairments, including their interactive and cumulative effects. We will consider all the relevant information in your case record that helps us determine your functioning, including your signs, symptoms, and laboratory findings, the descriptions we have about your functioning from your parents, teachers, and other people who know you, and the relevant factors explained in §§ 416.924a, 416.924b, and 416.929.

20 C.F.R. § 926a(e)(1)(i).

> The medical evidence may include formal testing that provides information about your development or functioning in terms of percentiles, percentages of delay, or age or grade equivalents. Standard scores (e.g., percentiles) can be converted to standard deviations. When you have such scores, we will consider them together with the information we have about your functioning to determine whether you have a "marked" or "extreme" limitation in a domain.

20 C.F.R. § 926a(e)(1)(ii).

Several mental disorders are included as Listings under 20 C.F.R. Part 404, Subpart P, Appendix, Appendix, Section 112.00.  "The structure of the mental disorders listings for children under age 18 parallels the structure for the mental disorders listings for adults but is modified to reflect the presentation of mental disorders in children.  The listings for mental disorders in children are arranged in 11 diagnostic categories," including "mental retardation (112.05)."  § 112.00A Introduction.  There is a detailed explanation in the Introduction to Section 112.00 regarding the significant differences between the listings for adults and children and the structure of the listings for, in part, mental retardation under Listing 112.05.  *Id.*

The introductory paragraph for Listing 112.05 states that "mental retardation" is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning."  *Id.* at § 112.05.  It is clear that the claimant must demonstrate both subaverage intellectual functioning *and* deficits in adaptive functioning, as well as satisfying one of the additional criteria, to prove entitlement to disability benefits under Listing 112.05.  *See* Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997); *see also* Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) ("For claimant to show that his impairment matches a listing, it must meet *all* of the specified" requirements – "[a]n impairment that manifests only some . . . no matter how severely, does not qualify.").

Listing 112.05 contains six sets of criteria.  If an impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the six sets of criteria, the child's impairment will meet Listing 112.05.

Material here, Listing 112.05C and D provide: "C. A valid verbal, performance, or full scale IQ of 59 or less; OR D. A valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant limitation of function." *Id.* (emphasis added). For example, in order to meet Listing 112.05D, it is not enough to simply have a physical or mental other impairment. The Plaintiff must establish that the physical or mental other impairment "impos[es] an additional and significant limitation of function." *Id.* at § 112.05.

Also, for listing 112.05D, "we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it causes more than minimal functional limitations, *i.e.*, is a "severe" impairment(s), as defined in § 416.924(c). If the additional impairment(s) does not cause limitations that are "severe" as defined in § 416.924(c), we will not find that the additional impairment(s) imposes an additional and significant limitation of function." § 112.00A Introduction.*.*

### III. Findings of the ALJ

In his Decision, the ALJ made several findings relative to the issues raised in this appeal:

1. JNNG was born on December 11, 2003; was a preschooler on July 28, 2008, the date the application was filed; and a school-age child as of the date of the hearing.

2. JNNG has not engaged in substantial gainful activity since July 18, 2008.

3. JNNG has the following severe impairments: attention deficit hyperactivity disorder (ADHD) and learning disorder.

4. JNNG "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in" 20 C.F.R. Part 404,

> Subpart P, Appendix 1. (The ALJ rejected Dr. Siddiqi's January 10, 2010, opinion that Plaintiff's "recent testing placed [JNNG] in the mental retardation range." R. 21.)

5. JNNG does not have an impairment or combination of impairments that functionally equals the listings.

6. In terms of the six functional equivalence domains listed in 20 C.F.R. § 416.926a(b)(1)(i)-(vi), JNNG has *marked* limitation in acquiring and using information; *less than marked* limitation in attending and completing tasks, interacting and relating with others, caring for herself; health and physical well-being; and has *no limitation* in moving about and manipulating objects. R. 16, 22-28.

## IV. Issues

Plaintiff raises two issues. First, Plaintiff argues that the ALJ erred in not *expressly* determining that JNNG's impairments did not medically meet or equal a listed impairment including Listing112.05C and D under 20 C.F.R Part 404, Subpart P, Appendix 1, Part B, Listing 112.05 (mental retardation). (No other listing number is mentioned by Plaintiff.) Doc. 11 at 13. Second, Plaintiff argues that the ALJ erred at step three of the evaluation sequence (consideration of the six functional domains) by failing to find extreme dysfunction despite JNNG scoring two or three standard deviations below normal limits in testing by the local school board. Doc. 11 at 14-15.

## V. Evidence

### Evidence from the administrative hearing

At the beginning of the hearing, the ALJ briefly spoke with JNNG who was seven years old and in the second year of kindergarten, although she did not know why she repeated kindergarten. JNNG responded affirmatively to liking school, her teachers, friends, learning, and doing her homework. R. 35-36.

Jacqueline Gent is JNNG's grandmother. R. 47-48. While she does not have legal custody (by court order) over JNNG, the child (since she was born in 2003) and her mother live with her. Notwithstanding the lack of legal custody, Ms. Gent was able to put JNNG in school and consent to medical care. R. 37-38.

In or around August 2008, Ms. Gent filed an application for benefits for JNNG. Prior to filing an application for benefits, Ms. Gent noticed that JNNG was slow in learning and could not deal with it. She was hyper so she took her to the doctor at Shands, Dr. Siddiqi, who told Ms. Gent that the child needed medicine and also suggested that Ms. Gent request benefits. R. 38-39.

Ms. Gent explained that JNNG repeated kindergarten because the school said she needed a setting with a smaller number of children, i.e., exceptional student classes. R. 40-41.

Ms. Gent stated that JNNG was not able to tie her shoes and has to be dressed, although the child will try. JNNG tries to feed herself, e.g., with a spoon, but like typical children, she is messy. According to Ms. Gent, JNNG does not complete her homework assignments-she really does not want to do it-and "get[s] upset because she can't do it." R. 41. The child gets upset with other activities especially when she does not receive her medicine. She does not want to cooperate. "[S]he don't want to do it, she gets in a corner, she want[s] to whine." R. 43-44. Ms. Gent stated that JNNG's teachers do not send homework home with her. R. 45.

Ms. Gent met with JNNG's teachers for the purpose of developing an individual education plan and to have the school start having tutors for her.   R. 45-46.   According to Ms. Gent, JNNG does not take tests.   R. 46.

Ms. Gent states that JNNG does not get along with other kids at home.   JNNG reportedly "love[s] to fight" "[e]very day, if [Ms. Gent is] not watching."   R. 46.

Ms. Gent gives the child her medication as prescribed.   R. 46.   Ms. Gent stated that according to the child's teachers, as long as JNNG is taking her medicine, they can cope with her.   *See* n. 2, *infra*.   The teacher told Ms. Gent that "they don't want her in school if she don't have her medicine."   R. 46-47.   The school nurse administers the medicine to JNNG once a day at school.   R. 47.

**Medical and other evidence of record**

Medical and other evidence presented to the ALJ is set forth in the ALJ's Decision at pages 17 through the top portion of page 22.   Doc. 8-3 at 17-22.   Plaintiff disagrees with the weight given to the evidence and the conclusions reached by the ALJ regarding whether JNNG is disabled, i.e., whether JNNG's impairments meet or equal a listed impairment and whether JNNG's impairments result in marked limitations in two domains of functioning or an extreme limitation in one domain.   Plaintiff does not disagree with the factual findings derived from the medical and other evidence submitted to the ALJ during the evidentiary hearing and in exhibits 1E through 11E and 1F through 19F.   R. 35-49, 124-387.   *See* Doc. 11.   Accordingly, the ALJ's factual findings appearing on page 17 through the top portion of page 22 of his Decision are incorporated by reference herein.

**ALJ findings and conclusions regarding whether JNNG is disabled**

The ALJ determined that "[i]n terms of the claimant's alleged ADHD and learning disorder, the objective medical evidence does not dictate a finding of 'disabled.'"   R. 21. The ALJ made the following findings to support this conclusion.

> The claimant's general adaptive behavior was 53.   Despite this, Dr. Siddiqi felt the claimant's medications are working and are "effective in controlling impulsivity."  The claimant's grandmother is called from the school if the claimant does not take her medications.   The claimant is not having any side effects   Although the claimant has at times exhibited significant symptoms of hyperactivity and an attention deficit problem, the record reflects that when she takes Focalin as prescribed the symptoms and functional limitations are much less severe.
> Dr. Siddiqi feels that the claimant's recent testing placed the claimant in the mental retardation range.   The undersigned rejects this proposition.   All relevant information in the record must be considered in arriving at a rating of functioning, including signs, symptoms, laboratory findings, descriptions of the child's functioning from parents, teachers, and others; and the relevant factors described in 416.924a, 416.924b, and 416.929.   Furthermore, the test scores cannot be considered in isolation.   No single piece of information taken in isolation, including a test score, can establish whether a child has a "marked" or "extreme" limitation (416.926a (e) (4) (i)).   Test scores are considered with the other information about a child's functioning, including reports of classroom performance and the observations of school personnel and others.   Additionally, the undersigned has considered Dr. Siddiqi's opinion.   But Dr. Siddiqi is not a licensed psychologist.   Dr. Siddiqi also fails to note that the claimant does well on her medications, and that her teachers have noted marked improvement.   The claimant shows the ability to understand categories, picture analogies, and answer questions logically and complete analogies.   She was also able to count objects one to ten, and identify upper and lower alphabet.   (Exhibit 14F).   The undersigned also notes that when the claimant was evaluated by the school psychologist, the claimant was not diagnosed as mentally retarded.   Her overall functioning was in the "lower extreme range."   Her overall adaptive functioning was "low in comparison to other children her age, with overall scores in the same range as her measured intellectual ability."   At no place in the report is the claimant diagnosed as mentally retarded.   Additionally, the claimant's teacher, Ms. Smith reported that the claimant is a very sweet little girl and that she is good with pretend play, displays good gross motor skills, and increased counting skills.   (Exhibit 8F).   The claimant is able to answer questions logically and complete analogies.   She is also able to count objects one to ten, identify 10 of 26 alphabet both upper and lower.   (Exhibit 14F).   The claimant's counting skills improved to the 25th

percentile rank by late February 2009.  Progress data collected, by her preschool teacher, Mrs. Thrift, show the claimant reached the goal of counting objects up to ten by week 21 of the school year.  The claimant's rate of progress was similar to that of her ESE peers.  (Exhibit 13F).  Therefore, the undersigned finds that taken as a whole, the claimant falls within the borderline range with attendant features.  (Exhibit 13F).  R. 21-22.

The ALJ also described and considered the six functional equivalence domains and made findings regarding any limitations caused by JNNG's impairments in light of applicable regulations and Social Security Rulings.  R. 14-16, 22-28.  In terms of the six functional equivalence domains listed in 20 C.F.R. § 416.926a(b)(1)(i)-(vi), the ALJ determined that JNNG has *marked* limitation in acquiring and using information; *less than marked* limitation in attending and completing tasks, interacting and relating with others, caring for herself; health and physical well-being; and has *no limitation* in moving about and manipulating objects.  R. 16, 22-28.

Ultimately, the ALJ concluded that JNNG "does not have an impairment or combination of impairments that result in either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning."  As a result, the ALJ determined that JNNG was not disabled since July 18, 2008, the date the application was filed.  R. 28.

## VI.  Legal Analysis

First, Plaintiff argues that the ALJ erred in not *expressly* determining that JNNG's impairments did not medically meet or equal a listed impairment including Listing112.05C and D under 20 C.F.R Part 404, Subpart P, Appendix 1, Part B, Listing 112.05 (mental retardation).  (No other listing number is mentioned by Plaintiff.)  Doc. 11 at 13.

The ALJ found that JNNG has two severe impairments: attention deficit hyperactivity disorder and learning disorder.   R. 16.   As a result, the ALJ proceeded to step three of the sequential analysis in order to determine whether the impairments meet or medically or functionally equals one of the listed impairments.   See Shinn ex rel. Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1278 (11th Cir. 2004).   Doc. 12-13.

For Plaintiff, the ALJ erred because he did not expressly mention a specific listing, not necessarily that the ALJ's ultimate conclusion was erroneous.   For example, Plaintiff mentions Listing 112.05 (mental retardation) and suggests that this "listing seems to fit" JNNG, doc. 11 at 13, not that it fits the child based on a review of and citation to evidence in the entire record.

It is true that the ALJ did not expressly refer to any listing that he considered in determining whether JNNG's impairments meet or medically equal a listing.   However, the Eleventh Circuit has stated that an ALJ may make an implied finding that a claimant does not meet a listing.   See Hutchinson v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986).

Aside from referencing subparts C and D of Listing 112.05, Plaintiff does not specifically demonstrate how the record evidence satisfies all of the requirements of Listing 112.05.   See generally Sullivan v. Zebley, 493 U.S. at 530 ("for a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.") (emphasis in original).   The Supreme Court recognized a similarly strict requirement for a claimant to show that she equaled a listing.   Id.

Dr. Siddiqi determined that JNNG's "recent testing data shows [JNNG] functioning to be in the mentally retarded range." R. 363. (Dr. Siddiqi is the only person in this Record to reach this conclusion.) The ALJ considered Dr. Siddiqi's "proposition" and discussed the matter in detail. R. 21. *See also* pp. 13-14, *supra*. The ALJ rejected this opinion because a child's functioning must be determined by considering the record as a whole. R. 21. The ALJ correctly noted that "test scores cannot be considered in isolation. No single piece of information taken in isolation, including a test score, can establish whether a child has a 'marked' or 'extreme' limitation (416.926a(e)(4)(i))." *Id.*

While the ALJ did not cite to Listing 112.05, it is a fair inference that the ALJ determined that JNNG did not meet or equal a listing, including Listing 112.05, the only listing mentioned by Plaintiff. The ALJ findings are supported by substantial evidence and he correctly applied controlling law.

Second, Plaintiff argues that the ALJ erred at step three of the evaluation sequence (consideration of the six functional domains) by failing to find extreme dysfunction despite JNNG scoring two or three standard deviations below normal limits in testing by the local school board. Plaintiff quotes from an October 2009 school board report summary, R. 347, and test scores to support the argument that JNNG "has extreme dysfunction of acquiring and using information," and failing acceptance, that JNNG "would have marked deficiencies in both the domain of acquiring and using information and the domain of attending and completing tasks. Doc. 11 at 14-15.

The ALJ acknowledged that JNNG has some serious limitations and specifically found that JNNG has a marked limitation in the domain of acquiring and using information and less than marked limitations in the domain of attending and completing tasks. R. 22-24. The ALJ refers to Dr. Siddiqi's opinion, test scores, and other evidence. However, the ALJ rejected Dr. Siddiqi's opinion based on his consideration of the record as a whole, including the test results relied on by Dr. Siddiqi.[1] The ALJ identified material portions of the record to support his conclusions. R. 21-22.

For example, JNNG's grandmother is called to school if JNNG does not take her medication. R. 21. Her grandmother states that JNNG does well when she takes her medication. R. 44. No side effects have been reported when JNNG takes her medication. R. 21. Dr. Siddiqi felt "[JNNG] is continuing to struggle with information processing and academic functioning. Her medication, however, has remained effective in improving her functioning." R. 21, 364. JNNG's preschool teacher, Mrs. Thrift, noted that JNNG had more severe attention and behavior problems when she did not take her medication. R. 172. *See also* R. 337, Childhood Disability Evaluation Form (on reconsideration) completed by William Prather, M.D. and Leslie Devitt, Ph.D., on August 4 and 3, 2009, respectively, stating, in part, "summary: marked language impairment. dx'd adhd, but controlled with meds. on meds does not meet listing level severity."[2]

"[JNNG] shows the ability to understand categories, picture analogies, and answer questions logically and complete analogies. She was also able to count objects one to

---

[1] Plaintiff does not contend that the ALJ erred in rejecting the opinion of Dr. Siddiqi.
[2] *See generally* Gibbs v. Barnhart, 130 Fed. Appx. at 431.

ten, and identify upper and lower alphabet. (Exhibit 14F)." R. 21. It was also noted "that when [JNNG] was evaluated by the school psychologist, [JNNG] was not diagnosed as mentally retarded. Her overall functioning was in the 'lower extreme range.' Her overall adaptive functioning was 'low in comparison to other children her age, with overall scores in the same range as her measured intellectual ability.' At no place in the report is [JNNG] diagnosed as mentally retarded." R. 21-22.

JNNG's "teacher, Ms. Smith, reported that [JNNG] is a very sweet little girl and that she is good with pretend play, displays good gross motor skills, and increased counting skills. (Exhibit 8F)." R. 22. "[JNNG's] counting skills improved to the 25th percentile rank by late February 2009. Progress data collected, by her preschool teacher, Mrs. Thrift, show [JNNG] reached the goal of counting objects up to ten by week 21 of the school year. [JNNG's] rate of progress was similar to that of her ESE peers. (Exhibit 13F)." R. 22. Mrs. Thrift opined that JNNG had an obvious problem with acquiring and using information, but only noted a serious problem in the area of comprehending oral instructions. R. 167. Mrs. Thrift also determined that, with the exception of completing work accurately without careless mistakes, JNNG had no problem or a slight problem in attending and completing tasks. R. 168. The ALJ found "that taken as a whole, [JNNG] falls within the borderline range with attendant features. (Exhibit 13F)." R. 22.

Substantial evidence supports the ALJ's decision that JNNG has a marked limitation in the domain of acquiring and using information and less than marked limitation in the domain of attending and completing tasks, R. 22-24, and is not otherwise disabled, R. 28.

## VII. Conclusion

Considering the record as a whole, the findings of the Administrative Law Judge were based upon substantial evidence in the record and he correctly followed the law.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on May 22, 2012.


          <u>s/   Charles A. Stampelos</u>
          **CHARLES A. STAMPELOS**
          **UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**